Filed 8/21/20  P. v. Springer CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE | A158263 |
| Plaintiff and Respondent, | |
| v. | (Del Norte County Super. Ct. No. CRF 19-9075) |
| TRAVIS LELAND SPRINGER, | |
| Defendant and Appellant. | |

Appellant Travis Springer pleaded guilty to sexual abuse of a minor and was sentenced to 12 years in prison.  On appeal he argues that the trial court erred in failing to hold a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)[1] and in imposing fines and fees without first determining his ability to pay.  We conclude that Springer forfeited his challenge to the imposition of the fines and fees, but we agree that the trial court erred in failing to hold a *Marsden* hearing.  We therefore conditionally reverse the judgment and remand for the trial court to hold a such a hearing.

---

[1] *Marsden* requires a trial court to give a criminal defendant a hearing when he or she seeks the substitution of appointed counsel on the ground that counsel has provided ineffective assistance.  (*Marsden*, at p. 120.)

1

FACTUAL AND PROCEDURAL
BACKGROUND

Felony charges were brought against Springer for allegedly having sexually abused a minor friend of his 13-year-old daughter. In April 2019, before the preliminary hearing took place, Springer asked the trial court to discharge his appointed counsel and substitute another attorney for him. The court held a brief *Marsden* hearing and denied the request. The preliminary hearing ensued, and Springer was subsequently charged by felony information with nine sex crimes.

In June 2019, Springer pleaded guilty to one count of continuous sexual abuse of a child under the age of 14 (Pen. Code, § 288.5, subd. (a)), and the remaining charges were dismissed. When sentencing was to take place, Springer again indicated that he was dissatisfied with his attorney and wanted substitute counsel appointed. This time, the trial court did not hold a *Marsden* hearing, and it proceeded to sentence Springer to the negotiated term of 12 years in prison. It also imposed various fines and fees.

II.
DISCUSSION

A. *The Trial Court Erred in Failing to Conduct a* Marsden *Hearing Before Sentencing.*

   1. Additional background.

      a. The trial court holds a *Marsden* hearing in April 2019.

As we have mentioned, the trial court held a *Marsden* hearing in April 2019 before the preliminary hearing. The court held the hearing after Springer said that his attorney was "not really fighting" for him and had never said whether he believed Springer was "guilty or innocent." Springer asked for an attorney who was "non-biased" because he felt his attorney was "against [him]." The court explained the process of a preliminary hearing to

2

Springer, and then asked for counsel's input. Springer's attorney said he had interviewed witnesses and had told Springer it "look[ed] really bad." Springer then complained about the prosecutor's withdrawal of a plea offer and the way a defense investigator had conducted her research. The court explained that Springer's attorney could not control how the prosecutor handled a plea offer, that Springer's attorney had conducted adequate work on the case, and that it (the trial court) didn't "think appointing somebody else [was] going to make a difference."

When the trial court indicated it would deny the *Marsden* request, Springer asked, "Can we postpone it or something?" He explained, "I was hoping to get some U.S. Codes that I have ordered." The trial court denied the postponement request, and the court proceeded with the preliminary hearing.

    b. Springer reiterates his dissatisfaction with his attorney.

At his arraignment eight days later, Springer pleaded not guilty. After the court scheduled a trial date, Springer's attorney, in referring to Springer, said, "He wants to fire me. But we just did a *Marsden* hearing [last week]." The court denied the request for a second *Marsden* hearing, ruling that "[u]nless there's been a change, [it was] not going to hear [the request] because it's called a repetition, an excessive request." The court then scheduled a readiness conference for May 15.

    c. Springer pleads guilty.

Instead of proceeding to trial, Springer pleaded guilty in June to one count of continuous sexual abuse of a minor. The declaration Springer signed in connection with his guilty plea stated he was freely and voluntarily entering the plea "[b]ecause [he was] guilty" or because he had discussed defenses with his attorney and the possibility of being convicted "on other or

3

more serious charges and risking . . . the possibility of a longer sentence." Springer indicated on the form that he was aware of the rights he was giving up by pleading guilty.

At the hearing at which Springer entered his guilty plea, the trial court first confirmed with Springer that he understood the charge against him, had signed the proposed plea agreement, was afforded enough time to discuss the case with his attorney, and did not have questions about the plea agreement. The prosecutor then offered a factual basis for the plea. The trial court asked Springer, "Sir, do you disagree with any of that?" Springer replied, "Yeah, honestly, yes." As his defense attorney began to interject, Springer added, "But, I guess the plea—so I guess I will agree with it. I don't know, I'm not sure." He then said, "A lot of that is not true." Springer's defense attorney remarked, "But some of it is, you know." After the prosecutor said that he thought "the defense counsel would stipulate that those are the allegations," Springer's attorney responded, "Yes, those are the allegations. And from what I understand is maybe this, certain specifics he doesn't agree with, but generally yes, that's what I'm understanding."

Springer then pleaded guilty. The court accepted the plea and found that there was a "factual basis for the plea," that Springer was "fully advised of [*sic*] the constitutional rights and the consequences of the plea and knowingly and intelligently waived those rights," and "the plea was freely and voluntarily entered into."

After some scheduling issues were discussed, the prosecutor asked whether Springer had been advised of certain implications of his plea form, and Springer's counsel affirmed that he had. The prosecutor stated, "[T]ypically when we have a plea, even though we have the change of plea form filled out by the defendant, we would go over his rights with him; if the

4

Court is not inclined to do that, I would just [request Springer's counsel] to represent everything that has been initialed by the defendant. [Springer's counsel] has been over that with the defendant and he believes that the defendant understands everything that he initialed on [the] form." Springer's attorney said he had gone over Springer's trial rights with him and believed Springer understood them. Directing its remarks to Springer, the court then stated, "Okay. Simply put, what everybody said was you have the right to a lawyer. You have the right to a jury trial. You have the right to confront and cross-examine witnesses. The lawyer would ask questions of anyone who would testify against you. You have the right to witnesses. You have the right to testify if you chose to do so. You can't be compelled to testify. Do you have any questions about any of your rights?" After Springer said he did not, the court responded, "All right, I'm satisfied." A sentencing hearing was scheduled for August 12.

       d. The trial court holds its first sentencing hearing.

On the day originally scheduled for Springer's sentencing, August 12, the prosecutor argued that Springer should be sentenced to the maximum term allowed under the plea agreement. The prosecutor then stated that the victim and her parents were present and wanted to make statements. Before they took the stand, however, Springer's attorney told the trial court, "The defendant is telling me he wants to make a motion to withdraw his plea." The trial court explained that Springer had a right to do so, and it then ordered everyone to return to court the following week.

       e. Springer indicates a desire for another *Marsden* hearing.

When the parties reconvened the following week, the trial court asked about Springer's interest in withdrawing his plea. His attorney replied that he had "talked to him about it," but "[t]here didn't appear to be any grounds,"

5

and that Springer was considering alleging that he had been "misadvised." When asked, the attorney confirmed that he (the attorney) wanted to proceed but said he was "really questioning whether [Springer] was capable of assisting [him] rationally." Suggesting a doubt about Springer's mental competency, the attorney said that "perhaps" an evaluation should be prepared under Penal Code section 1368.[2] The court advised the attorney to explain his request and to provide examples of Springer's incompetence. Defense counsel repeatedly asserted that Springer did not appear capable of rationally assisting him in putting on a defense in part because he refused to "write out his side of the story." The court denied the request after noting that Springer had the right to remain silent through the proceedings and that it had "not heard anything beyond a conclusive statement [Springer] is not able to assist you for whatever reason."

Before proceeding to sentencing, Springer's attorney said he had "[j]ust one last issue." After informing the trial court that Springer had "talked about a *Marsden*," Springer's attorney first addressed Springer and the following exchange took place:

"[Defense counsel]: I need to know right now are you going to or not? Do you want a *Marsden* hearing or not? I need to know before we go to[o] far.

"[Springer]: I don't know what I want man. It's true, your Honor, what he says is true, it's not that I don't want to know, I want the truth to come out. [¶] . . . [¶] I asked him to help me and I want a *Marsden* motion because he has directed me the wrong way, like, it was, like, I don't care about 12 years or six years, I want the truth and it's wrong with him, to live with that,

---

[2] Under Penal Code section 1368, subdivision (b), if counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall determine the defendant's mental competence in a hearing.

with that guilt of—I don't care—I know I do care, I mean, I don't know, I don't know what I want, man.

"THE COURT: Okay.

"[Springer]: I haven't from day one, I can't be around my kids, and when I first got in here all I wanted was to get out and see my kids, and I didn't say anything in the beginning. And I admitted I lied to him and he has lied to me. I don't know if he's going to admit it or not.

"[Defense counsel]: Do you want a *Marsden* hearing?

"[Springer]: I don't know what I want. That's what I'm saying, man. I don't mean to be upset. And I don't freaking know what I want. I don't know what I want to do, man. I tried to be honest, I'm trying to be honest. I pray to God every day to show which direction to take and I haven't seen it yet.

"[Defense counsel]: This is what I'm dealing with as far as a [Penal Code section] 1368 motion.

"[Springer]: . . . I don't know what to do right now. I have no clue. I'm being honest, why can't everybody be honest? I need to, yes, I need a *Marsden* hearing. I don't know what I need, I really don't.

"[Defense counsel]: He wants a *Marsden.*

"[Springer]: I want the truth to be said on the table.

"[Defense counsel]: Do you want a *Marsden*? Then say so.

"THE COURT: All right.

"[Springer]: I want a continuance, please."

The trial court did not rule on whether there should be a *Marsden* hearing, and no such hearing was held. Instead, the trial court stated, "People, you may submit your side." The prosecutor again detailed factors in aggravation and argued that a 12-year sentence was appropriate. The

7

victim, her parents, and the probation department all made statements to the court.

The defense attorney said he believed Springer wanted to "testify on [his] own behalf." Springer took the stand, and his attorney questioned him about potentially mitigating circumstances. The trial court agreed with the prosecution that "the circumstances in aggravation far outweigh . . . the circumstances in mitigation," and imposed the maximum sentence under the plea agreement, 12 years (the midterm sentence).

2. Analysis.

Springer argues that the trial court erred in failing to hold a *Marsden* hearing after he asked for one at his final sentencing hearing. We agree that a *Marsden* hearing should have been held.

When a defendant asks to replace his appointed attorney, the trial court is required to "permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604.) "A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*Ibid.*) A defendant's Sixth Amendment right to effective assistance does not mean that he possesses the right to present a defense of his choosing. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1192; *People v. Hamilton* (1989) 48 Cal.3d 1142, 1162.) However, "to compel one charged with [a] grievous crime to undergo a trial with the assistance of any attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." (*Schell v. Witek* (9th Cir. 2000) 218 F.3d 1017, 1025.) The denial of a *Marsden* motion is

8

reviewed for abuse of discretion. (*People v. Smith*, *supra*, 30 Cal.4th at p. 604.) But a trial court's refusal "to afford a defendant an opportunity to set forth the reasons underlying his request for the substitution of appointed counsel constitutes an abuse of discretion by the court." (*People v. Chavez* (1980) 26 Cal.3d 334, 346.)

A trial court is not obligated to initiate a *Marsden* inquiry sua sponte. (*People v. Lara* (2001) 86 Cal.App.4th 139, 150.) Rather, the court's duty to conduct an inquiry arises only when the defendant " 'asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel.' " (*People v. Leonard* (2000) 78 Cal.App.4th 776, 787, italics omitted.) A defendant's "[m]ere grumbling about his counsel's failure . . . is insufficient" to constitute a request for new counsel. (*People v. Lee* (2002) 95 Cal.App.4th 772, 780.) And although a formal, legal motion is not required, the defendant must "at least [make] some clear indication . . . that he wants a substitute attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8 (*Lucky*).) Further, a reviewing court "will not find error on the part of the trial court for failure to conduct a *Marsden* hearing in the absence of evidence that defendant made his desire for appointment of new counsel known to the court." (*People v. Richardson* (2009) 171 Cal.App.4th 479, 484.) Under *Marsden*, a defendant can seek the discharge and replacement of counsel at any stage of a criminal proceedings, including before or after a defendant is convicted. (*People v. Smith* (1993) 6 Cal.4th 684, 694.)

We agree with Springer that he was sufficiently clear in indicating his desire for a *Marsden* hearing on the day of his sentencing, both when he said, "I want a *Marsden*" and when his attorney said, "he wants a *Marsden*." Respondent all but concedes that the statement by Springer's counsel that

9

Springer "want[ed] a *Marsden*" was a sufficiently clear assertion, but argues that Springer "immediately contradicted" this statement by saying he "want[ed] the truth to be said on the table." Far from contradicting the *Marsden* request, however, Springer's statement was consistent with his stated desire to withdraw his plea—which itself was part of his reason for wanting the appointment of substitute counsel.

Springer argues that this case is similar to *People v. Armijo* (2017) 10 Cal.App.5th 1171, 1180. In *Armijo*, the defendant sent a letter to the trial court asking for substitute counsel in which he stated, "I am requesting that you assign my case to a state-appointed attorney." (*Id.* at pp. 1176–1177.) The court received this letter, but it did not hold a *Marsden* hearing, and the defendant went on to accept a plea agreement. (*Armijo*, at p. 1180.) The court of appeal deemed the trial court's failure to hold the hearing reversible error. (*Ibid.*) Although Springer's statements were more equivocal than the defendant's statement in *Armijo*, we cannot say they failed to directly or implicitly challenge his counsel's effectiveness or to invoke his right to a *Marsden* hearing.

*People v. Sanchez* (2011) 53 Cal.4th 80 (*Sanchez*) is instructive. There, the defendant pleaded guilty. (*Id.* at p. 84.) At his initial date for sentencing, a deputy public defender, who was not his appointed counsel, told the trial court that the defendant wanted to explore having his plea withdrawn. (*Id.* at p. 85.) The trial court eventually appointed private conflict counsel to evaluate the defendant's motion to withdraw the plea. (*Ibid.*) The defendant appeared at a subsequent hearing with the private attorney and his appointed public defender. (*Ibid.*) The private attorney told the court that the defendant was adamant about withdrawing his plea even though he (the private attorney) had found no legal grounds to support such a withdrawal.

(*Ibid.*)  The court then indicated that it would proceed with sentencing at a later date and told the appointed public defender that he would continue to represent the defendant.  (*Ibid.*)  At the subsequent sentencing hearing, his appointed public defender told the court that the defendant still wanted to withdraw his plea.  (*Id.* at pp. 85–86.)  The court denied the plea withdrawal and sentenced the defendant to the negotiated term.  (*Id.* at p. 86.)

The Supreme Court held that the trial court's duty to conduct a *Marsden* hearing was triggered when the defendant's attorney requested the appointment of substitute counsel to investigate the defendant's desire to withdraw his plea.  (*Sanchez, supra*, 53 Cal.4th. at pp. 86, 92.)  The Supreme Court concluded that "when a criminal defendant indicates after conviction a desire to withdraw his plea on the ground that his current counsel provided ineffective assistance," the "trial court is obligated to conduct a *Marsden* hearing . . . only when there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.' "  (*Sanchez,* at pp. 89-90, citing *Lucky, supra*, 45 Cal.3d at p. 281.)

Here, Springer gave " 'at least some clear indication' " that he wanted a substitute attorney when he discussed wanting to explore withdrawing his plea on the basis that he had been inadequately represented.  (*Sanchez, supra*, 53 Cal.4th at pp. 89–90.)  Respondent claims that Springer failed to assert or imply that his counsel's performance was inadequate.  We disagree.  Springer and his defense counsel were in conflict throughout the proceedings, and Springer's comments on the record went beyond mere grumblings about his attorney's failings.  While not perfectly articulated, Springer's complaints conveyed both a desire to withdraw his plea and a belief that he had been inadequately advised.  Springer specifically claimed that his counsel had

11

"directed [him] the wrong way" and suggested that his desire for the truth to be "said on the table" was more important to him than proceeding under the negotiated plea agreement.

The California Supreme Court stated in *Lucky* that "a trial court's duty to permit a defendant to state his reasons for dissatisfaction with his attorney arises when the defendant *in some manner* moves to discharge his current counsel." (*Lucky*, *supra*, 45 Cal.3d at p. 281, italics added.) Here, Springer unquestionably moved in some manner to seek a discharge of his attorney by stating he wanted a *Marsden* hearing. Further, as *Marsden* itself explained, a trial court errs in denying a "a motion for substitution of attorneys solely on the basis of [its] courtroom observations." (*Marsden*, *supra*, 2 Cal.3d at p. 124.) Here, we must conclude that the trial court denied Springer's motion for a *Marsden* hearing at the time of the sentencing hearing on the sole basis of courtroom observations because nothing in the record indicates that he was given the opportunity to expound on his request for substitute counsel outside the presence of the prosecution.

Accordingly, we remand the matter because we are unable to conclude beyond a reasonable doubt that Springer's plea and resulting judgment were not the result of the denial of effective assistance. (*Marsden*, *supra*, 2 Cal.3d at p. 126.) In doing so, we take no position on the merits of Springer's request. After inquiring into Springer's desire for new counsel, the trial court shall exercise its discretion in determining whether his claims are credible.

B. *Springer Forfeited His Challenge to the Imposition of Fines and Fees.*

Without objection, the trial court ordered Springer to pay $300 in restitution (Pen. Code, § 1202.4, subd. (b)), imposed and suspended a $300 parole-revocation fine (Pen. Code, § 1202.45), imposed a court security fee of $40 (Pen. Code, § 1465.8) and a criminal conviction assessment of $30 (Gov. Code, § 70373). Relying on *People v. Dueñas*, Springer argues that the trial

12

court violated his constitutional rights when it imposed these assessments and fines totaling $670 without first determining his ability to pay. (*People v. Dueñas* (2019) 30 Cal. App.5th 1157, 1168 (*Dueñas*).) He asks that we vacate these assessments, and stay theses fines, or remand the matter for a hearing on his ability to pay. We agree with respondent that Springer forfeited this claim by failing to object in the trial court.

*Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) Springer was sentenced eight months after *Dueñas* was decided. Therefore, at the time of sentencing he could have raised an ability to pay objection based on *Dueñas* yet neglected to do so. Generally, a criminal defendant who fails to challenge "an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K.* (2007) 40 Cal.4th 875, 880.) Further, " ' "a constitutional right," or a right of any other sort,' " may be forfeited. (*Ibid*.) Thus, Springer's failure to express concern about his inability to pay in the trial court forfeits his right to challenge the fines and fees on appeal.

Because we decide this issue on forfeiture grounds, we express no view as to the substantive ruling of *Dueñas*, and note that our state Supreme Court granted review of its holding in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844. We further note that, depending on the outcome of the *Marsden* hearing held on remand, Springer may have the ability to raise this issue at a new sentencing hearing.

13

## III.
### DISPOSITION

The judgment is conditionally reversed.  The case is remanded to the trial court with directions to hold a *Marsden* hearing and to appoint new counsel if Springer can show that failure to do so would substantially impair his right to assistance of counsel.  (*Sanchez*, *supra*, 53 Cal.4th p. 92.)  The trial court shall entertain any motions that potential new counsel makes, but if counsel makes no motions or they are denied, the court shall reinstate the judgment.  (*Id.* at pp. 92–93.)  If Springer's *Marsden* motion is denied, the court is directed to reinstate the judgment.  (*Id.* at p. 93.)

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.

*People v. Springer*  A158263

15