Filed 4/19/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAMON ARMIJO,<br><br>    Defendant and Appellant. | B266687<br><br>(Los Angeles County<br>Super. Ct. No. TA132994) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Reversed conditionally and remanded with directions.

    James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

    Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Analee J. Brodie and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

Ramon Armijo appeals from a judgment of conviction entered following his negotiated plea of no contest to attempted murder and admission to sentencing enhancement allegations. Prior to his plea, Armijo sent two letters to the trial court expressing concern that the public defenders assigned to represent him had provided ineffective assistance. Armijo requested in the letters that the court discharge those attorneys and appoint replacement counsel. Armijo contends that his plea and conviction should be vacated because the trial court committed reversible error under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) by failing to hold a hearing on his requests.

We agree with Armijo that *Marsden* error occurred here. Armijo's request in his first letter became moot when, through no action of the trial court itself, the attorneys about whom Armijo complained in that letter were replaced by another court-appointed counsel. However, the trial court later erred in failing to hold a *Marsden* hearing on Armijo's second letter, which requested the discharge of the replacement counsel and the substitution of another counsel. On the record before us, this error was not harmless beyond a reasonable doubt. Accordingly, we conditionally reverse the judgment and remand with directions to the trial court to hold a *Marsden* hearing and to appoint new counsel for Armijo if the court concludes that the assistance rendered by his previous attorney was inadequate. We direct the court to reinstate the judgment, however, if it concludes otherwise following the *Marsden* hearing and thus declines to appoint new counsel, or if it appoints new counsel and that counsel either declines to file a motion to vacate Armijo's plea or the court denies any such motion that is filed.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Charge and Special Allegations Against Armijo*

This case arises out of an April 11, 2014 incident in which Armijo allegedly stabbed a man with a "bayonet type knife." Following a preliminary hearing on July 29 and 30, 2014, the People filed an information charging Armijo with attempted willful, deliberate and premeditated murder (Pen. Code,[1] §§ 187, subd. (a), 664), and specially alleging he had personally used a deadly weapon (§ 12022, subd. (b)(2)).  The information also specially alleged Armijo had suffered one prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12) and section 667, subdivision (a)(1). Armijo pleaded not guilty and denied the special allegations at his August 13, 2014 arraignment.

Deputy Public Defender Delia Metoyer represented Armijo at his preliminary hearing and arraignment, and then at nine pretrial conferences from September 4, 2014 through January 13, 2015.  On January 5, 2015, Metoyer filed on Armijo's behalf a motion to set aside the information under section 995.  A different deputy public defender, however, Diana Alexander, represented Armijo at a January 22, 2015 pretrial conference; Alexander informed the trial court that the case had been reassigned to her.  The court granted Alexander's oral motion made on Armijo's behalf to continue the case to March 9, 2015.

---

[1]    Unless otherwise stated, all further statutory references herein are to the Penal Code.

B.     *Armijo's Letter to the Trial Court Regarding Metoyer and Alexander*

After Alexander replaced Metoyer, Armijo sent a letter dated February 2, 2015 to the trial court. In the letter, Armijo expressed concerns about Metoyer's past handling of his defense and the prospect of being represented going forward by Alexander.

To begin with, Armijo stated that following the preliminary hearing, he asked Metoyer "several questions about the direction of my case," but that Metoyer "seemed to have difficulty making time to answer my questions or provide reasonable explanations in person or over the phone if she accepted my collect calls." Armijo further stated that during one phone conversation he asked Metoyer "about the progress being made by her investigator and she admitted she had not been in contact with him." Armijo described Metoyer as "inexperienced and overwhelmed by her caseload and schedule demands." He also said that Metoyer had told him that she "had a family emergency involving her grandparents" and, as a result, she did not have time in December 2014 to file his section 995 motion. Armijo additionally complained that, after the motion was filed, Metoyer "never bothered to discuss it with me."

Armijo also said in the letter that he learned on January 22, 2015 that "Metoyer was no longer able to represent me and that my case would be continued for another 45 days" to March 9, 2015. Referring to Alexander, Armijo stated that he was concerned that his case had been reassigned from Metoyer to "another overwhelmed and inexperienced public defender." He thus requested that the court order a different state-appointed

4

attorney to be assigned to his case to replace Metoyer and Alexander.

The clerk's office in the trial court received Armijo's letter and file stamped it on February 17, 2015.

Armijo's next court date following the court's receipt of his letter was the March 9, 2015 pretrial conference that the court had set at Alexander's request. But at that conference, Deputy Public Defender Francine Logan, not Alexander, appeared on Armijo's behalf. Logan informed the court that she "ha[d] just been assigned [to the] case." She described the discovery as "voluminous" and moved to continue the case to April 9, 2015. In granting that motion, the trial court told Armijo that he had been "extremely patient," but that because Logan was newly assigned to the case, she "need[ed] additional time . . . to prepare for [the] trial." There is no indication in the record that Logan was assigned to the case to replace Metoyer and/or Alexander as a result of any action that the trial court took in response to Armijo's February 2, 2015 letter requesting appointment of new counsel. The court did not a hold a hearing on the request or make any mention of it at the March 9, 2015 conference.

C.    *Armijo's Letter to the Trial Court Regarding Logan*

On April 9, 2015, a different deputy public defender stood in for Logan to represent Armijo that day and requested that the case be trailed to April 15, 2015; the trial court granted that request. On April 15, yet another deputy public defender stood in for Logan and requested that the case be trailed to April 21, 2015; the court granted that request as well. It is not clear from the record precisely why Logan was absent at the April 9 and 15 pretrial conferences.

5

On the heels of the April 15 pretrial conference, Armijo sent a second letter, dated April 16, 2015, to the trial court. In this letter, Armijo expressed concerns about Logan's handling of his defense.

Armijo began by voicing his frustration over Logan's absences at the April 9 and 15 pretrial conferences and the resulting rescheduling of the conference.[2] Next, Armijo catalogued complaints about Logan's representation of him dating back to the March 9, 2015 conference at which she first appeared on his behalf. In particular, Armijo stated that Logan had "assured" him on that date that "she had 17 years [of] experience and that she would remain in contact with me before my next court date. In fact, she indicated she would visit me in the county jail so that we could review my case. She never visited me, nor did she accept the numerous collect calls I made to the number on her business card. I also wrote her a letter reminding her that I was still waiting to meet with her at her convenience." Armijo added that he was concerned that the pending section 995 motion was deficient because it "focus[ed] on technicalities never mentioning the actual [preliminary hearing] testimony," and that he wanted to discuss the motion with Logan, but she was unavailable for that.

Armijo further noted that, since the inception of the case, he had been assigned "[three] different public defenders"; he opined that "not one of them has been reliable, dependable, or able to provide the quality legal representation required to be

_____

2       Armijo indicated in the letter that he was told that Logan missed the April 9 conference due to illness. The letter offered no explanation for her absence from the April 15 conference.

6

successful in my case." Armijo also stated that he was frustrated by the "pattern of unwanted continuances" that he thought would stop after Logan was assigned to his case, but that had persisted. Armijo concluded the letter by stating, "It is rather obvious that the public defender's [*sic*], for whatever reasons, has not been able to adequately represent me, and for these reasons I am requesting that you assign my case to a state-appointed attorney."

The clerk's office in the trial court received Armijo's second letter and file stamped it on April 24, 2015. The court did not hold a hearing on Armijo's request in the letter for the discharge and replacement of Logan. The court made no mention of the letter in any of the subsequent proceedings in the case.

D. *Proceedings Subsequent to the Second Letter*
    1.    *The Denial of Armijo's Section 995 Motion and the Filing of an Amended Information*

On April 21, 2015, which was in between the date of Armijo's second letter and the date the clerk's office received it, the trial court held a pretrial conference. Logan represented Armijo. At the conference, the court set May 7, 2015 as the hearing date on Armijo's section 995 motion. Armijo failed to appear in court on May 7, however, and so the hearing was trailed to May 12.

Armijo appeared at the hearing on May 12. Logan represented him and argued the section 995 motion, which the trial court denied.

On June 3, 2015, the People filed an amended information, which was identical in all respects to the initial information, except that it added an allegation that Armijo had inflicted great

7

bodily injury in committing the offense with which he was charged. (§ 12022.7, subd. (a).) Armijo again pleaded not guilty to the charge and denied the special allegations.

    2.    *Armijo's Negotiated Plea and Resulting Conviction*

On June 23, 2015, Armijo appeared in the trial court with Logan. He entered a negotiated plea of no contest to attempted murder and admitted the great bodily injury and prior strike allegations. In accordance with the plea agreement that Armijo reached with the People, the court sentenced him to 13 years in state prison and dismissed the remaining special allegations. The court awarded Armijo presentence custody credits of 514 days and imposed statutory fines, fees, and assessments.

    3.    *Armijo's Notice of Appeal and Request for a Certificate of Probable Cause To Appeal*

On August 5, 2015, Armijo filed a timely notice of appeal in which he stated that he intended to challenge the validity of his plea. Armijo also filed a request for a certificate of probable cause allowing him to make that challenge. In his request, he referred to the two letters he sent to the trial court complaining about the assistance he received from his public defenders and seeking the appointment of substitute counsel. Citing *Marsden*, Armijo indicated that the trial court had not afforded him the opportunity to explain the reasons for his request. He also listed numerous grievances against Logan. Among other things, he stated that she failed to discuss the section 995 motion with him; improperly induced him to accept the plea deal rather than considering possible trial strategies; and "failed to clearly and

8

thoroughly explain [the] guilty plea." The trial court granted Armijo's request for a certificate of probable cause.

## DISCUSSION

Armijo's sole contention on appeal is that the trial court committed reversible error under *Marsden* by failing to hold a hearing in response to his letters requesting the discharge of his public defenders and the appointment of replacement counsel. For the reasons set forth below, we conclude that Armijo is correct as to the second letter and therefore reverse the judgment of conviction.

A.      *Governing Law*

In *Marsden*, the California Supreme Court held that the constitutional right of criminal defendants to the assistance of court-appointed counsel if they cannot afford private counsel encompasses the right to have their court-appointed counsel discharged and replaced by another one when the ""'failure to do so would substantially impair or deny the right'"" to assistance of counsel. (*Marsden, supra*, 2 Cal.3d at p. 123.) "'A defendant is entitled to [this] relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]" (*People v. Fierro* (1991) 1 Cal.4th 173, 204.)

"[A] proper and formal" *Marsden* motion is not required—the defendant need only clearly indicate to the trial court "in some manner" that he or she is requesting the discharge and

replacement of the appointed counsel.  (*People v. Lucky* (1988) 45 Cal.3d 259, 281 & fn. 8; see *People v. Reed* (2010) 183 Cal.App.4th 1137, 1146 [defendant must "put the trial court on notice" of a desire to replace appointed counsel].)  Direct correspondence with the trial court is an acceptable manner for the defendant to make the request.  (See, e.g., *People v. Lloyd* (1992) 4 Cal.App.4th 724, 729-730.)

The defendant's right under *Marsden* to seek the discharge and replacement of court-appointed counsel applies at all stages of a criminal proceeding.  The request thus may be made before or after a defendant is convicted.  (*People v. Smith* (1993) 6 Cal.4th 684, 694.)

Most critically for purposes of Armijo's case, once the defendant clearly indicates to the trial court a request for the discharge and replacement of appointed counsel, the court must hold a hearing to allow the defendant to explain the basis for the request.  (*People v. Sanchez* (2011) 53 Cal.4th 80, 89-90 (*Sanchez*); *People v. Mendoza* (2000) 24 Cal.4th 130, 156-157; *People v. Lloyd*, *supra*, 4 Cal.App.4th at p. 731.)  This hearing requirement stems from *Marsden* itself, which gave rise to the term of art "'*Marsden* hearing'" to describe the proceeding at which such requests are to be resolved.  (See *Sanchez*, at pp. 89-90.)

In elucidating the hearing requirement, the Supreme Court in *Marsden* began by noting that "the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney . . . is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney."  (*Marsden*, *supra*, 2 Cal.3d at p. 123.)  The court admonished, however, "that the trial court cannot

10

thoughtfully exercise its discretion . . . without listening to [the defendant's] reasons for requesting a change of attorneys. A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom." (*Ibid*.) The court stated that to ensure that the right to discharge and replace appointed counsel is meaningful, the defendant must "be given ample opportunity to explain and if possible to document the basis of his contention [beyond the] bare complaint[s]" that counsel is not providing adequate assistance. (*Id*. at p. 125.) Denial of that opportunity, the court held, is legal error that compels reversal of the defendant's conviction unless the record shows beyond a reasonable doubt that the error was harmless. (*Id*. at p. 126; see *Sanchez, supra*, 53 Cal.4th at p. 92.)

B.    *The Trial Court Erred by Failing To Hold a* Marsden *Hearing in Response to Armijo's Request in His Second Letter for the Discharge and Replacement of His Court-appointed Attorney*

Armijo's two letters to the trial court triggered his right to a *Marsden* hearing. Although his letters were not formal *Marsden* motions, Armijo clearly indicated in them that he sought the discharge of the public defenders who were representing him and their replacement by another court-appointed counsel.

Technically, Armijo's request in his first letter was rendered moot when Logan replaced Metoyer and Alexander as

11

Armijo's attorney. Although the record does not indicate that this switch came about as the result of any action by the trial court, Armijo got what he wanted in the first letter: a new lawyer. That still leaves the second letter, however. And in it, Armijo asked the trial court to replace Logan with another court-appointed counsel. The trial court failed to hold a hearing on that request. Perhaps Armijo would have been unable to show (as *Marsden* requires) that Logan had provided inadequate representation or that he had become embroiled in such an irreconcilable conflict with Logan that ineffective representation was likely to result. But Armijo was entitled to the opportunity to try to make that showing at a *Marsden* hearing. The trial court erred in denying Armijo that opportunity.[3]

The People's counter-arguments are unavailing. First, citing *People v. Lovings* (2004) 118 Cal.App.4th 1305 and *People v. Lobaugh* (1987) 188 Cal.App.3d 780, the People assert that Armijo forfeited his *Marsden* rights by entering a no contest plea. *Lovings* and *Lobaugh* are inapposite. In both of those cases, the defendants were given the opportunity to present *Marsden* motions at *Marsden* hearings. Following the hearings, the trial courts denied the motions; subsequently, the defendants entered guilty pleas and were convicted. (*Lovings*, at pp. 1307-1309; *Lobaugh*, at p. 783.) The appellate courts held that the

---

[3] It is unclear from the record whether the trial court judge personally saw Armijo's letters. Even if the judge did not see them, this would "not justify the court's failure to conduct [a *Marsden*] hearing" because it was incumbent on the clerk's office, which file-stamped the letters, to bring them to the judge's attention. (*People v. Lloyd, supra,* 4 Cal.App.4th at p. 731 & fn. 7.)

defendants' pleas waived their right to challenge the denial of their *Marsden* motions.  (*Lovings*, at p. 1311; *Lobaugh*, at p. 786.)

Here, by contrast, Armijo had no *Marsden* hearing in the first place.  Unlike the defendants in *Lovings* and *Lobaugh*, Armijo is not challenging a pre-plea denial of a *Marsden* motion; he is challenging a pre-plea denial of a *Marsden* hearing.  Armijo's case is thus akin to *Sanchez*, *supra*, 53 Cal.4th 80.  The defendant there entered a guilty plea.  At his sentencing hearing a month later, however, the defendant sought to vacate his plea and requested, through an informal *Marsden* motion, the discharge of his court-appointed attorney and replacement by another on the ground that the attorney had provided ineffective assistance in connection with the plea.  (*Sanchez*, at pp. 84-85.)  The trial court declined to conduct a *Marsden* hearing.  The Supreme Court held that the failure to do so was reversible error.  (*Sanchez*, at pp. 84, 92.)  There was no suggestion in *Sanchez* that the defendant's plea forfeited his right to a *Marsden* hearing.  Armijo's plea did not forfeit his right to a *Marsden* hearing either.[4]

Second, the People contend that Armijo's second letter "did not make a clear request for substitute counsel" and thus "no *Marsden* inquiry by the trial court was required."  This is

---

[4]  *People v. Eastman* (2007) 146 Cal.App.4th 688 is in the same vein as *Sanchez*.  The Court of Appeal in *Eastman* held the trial court erred in failing to hold a *Marsden* hearing upon receipt at the sentencing hearing of the defendant's request to withdraw his plea and discharge and replace his court-appointed attorney who had advised him to enter the plea.  (*Eastman*, at pp. 695-696.)  As in *Sanchez*, there was no hint in *Eastman* that the defendant's plea forfeited his right to a *Marsden* hearing.

incorrect. Armijo stated unequivocally in the second letter, "I am requesting that you assign my case to a state-appointed attorney." We are not sure what more the People believe Armijo should have said to trigger his right to a *Marsden* hearing.[5]

Third, citing *People v. Freeman* (1994) 8 Cal.4th 450 and *People v. Wharton* (1991) 53 Cal.3d 522, the People contend that if Armijo's second letter is deemed a request for substitute counsel, it obviated the need for a *Marsden* hearing because the letter set forth the basis of his dissatisfaction with Logan in "'sufficient detail.'" *Freeman* and *Wharton* have no bearing here. In both of those cases, the trial courts duly considered the defendants' detailed recitation of complaints about their court-appointed attorneys and, based on that review, denied the defendants' requests for the appointment of substitute counsel without holding a "'full-blown [*Marsden*] hearing.'" (*Freeman*, at p. 481; *Wharton*, at p. 580.) Here, by contrast, there is no

---

[5] Seizing on Armijo's statement in the second letter that he was "still without an attorney," the People assert that Armijo apparently was of the view that Logan no longer was representing him as of the date of the letter and, therefore, the letter did not trigger a right to a *Marsden* hearing on the replacement of an existing court-appointed attorney with another. The People read too much into Armijo's statement. Taken as a whole, the letter indicates that Armijo was aware that Logan still was representing him and that the new attorney whose appointment he was seeking would replace Logan. Armijo's statement that he was "still without an attorney" may simply have been a rhetorical device to call the court's attention to his frustration stemming from Logan's absences at the April 9, 2015 hearing, and then again at the April 15, 2015 hearing, which was the day before he transmitted the second letter.

evidence in the record that the trial court ever considered Armijo's complaints about Logan in the second letter or that the court even looked at the letter. Thus, whether Armijo's letter was sufficiently detailed within the meaning of *Freeman* and *Wharton* to excuse the need for a *Marsden* hearing is irrelevant.

Equally misplaced is the People's assertion that Armijo's tactical disagreements with Logan that he outlined in the second letter are not grounds for replacement of court-appointed counsel under *Marsden*. In cases that so hold, the trial courts held *Marsden* hearings and considered the defendants' complaints about their counsel. (E.g., *People v. Streeter* (2012) 54 Cal.4th 205, 228-231.) That did not happen here. In any event, Armijo's objections went beyond tactical disagreements with Logan; he also charged that Logan was unavailable and failed to keep in touch with him.

Finally, we are not persuaded by the People's argument that Armijo abandoned his *Marsden* request because he failed to assert it at the April 21, 2015 pretrial conference, five days after he transmitted the second letter. Abandonment of a *Marsden* request has been found where the defendant affirmatively withdrew it (*People v. Padilla* (1995) 11 Cal.4th 891, 927, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1), and where the defendant failed to take advantage of the opportunity to present additional reasons for his request for new counsel at a second *Marsden* hearing after being afforded the opportunity to explain his request at an initial *Marsden* hearing (*People v. Vera* (2004) 122 Cal.App.4th 970, 976-977, 981-982). Nothing like that happened here: Armijo never withdrew his *Marsden* request, and he never had the opportunity to explain the request at a second *Marsden* hearing, let alone a first.

In *People v. Jones* (2012) 210 Cal.App.4th 355, 362, the Fourth District Court of Appeal held that the defendant abandoned his *Marsden* request after he sought or stipulated to several continuances for a *Marsden* hearing but then proceeded to trial without reminding the trial court of the pending *Marsden* request. Nothing like that happened here either; no *Marsden* hearing ever was scheduled and then continued.

In finding abandonment in *Jones*, the Court of Appeal invoked the principle that a criminal defendant may be deemed to have abandoned a right by failing to press for a hearing on that right or by acquiescing in the trial court's inadvertent failure to hold a hearing. (*People v. Jones*, *supra*, 210 Cal.App.4th at p. 361, citing *People v. Braxton* (2004) 34 Cal.4th 798, 813-814.) Here, Armijo did not press for a *Marsden* hearing at the April 21 pretrial conference (or at subsequent proceedings) and, from the record, it appears that the trial court's failure to hold the hearing was inadvertent. Nevertheless, for two reasons, we decline to apply the principle on which *Jones* relied. For one, in *Jones*, the defendant's counsel was fully aware of the *Marsden* request. Indeed, counsel sought a number of the continuances of the *Marsden* hearing that the trial court granted. The failure to press for the *Marsden* hearing or remind the court about it thus lies largely with the defendant's counsel. Here, by contrast, there is no indication from the record that Logan knew that Armijo had written to the trial court about her and was seeking substitute counsel. Additionally, it seems quite possible that Armijo did not raise the *Marsden* issue at the April 21, 2015 pretrial conference out of a mistaken belief that the court already had received his second letter (it was not received until April 24) and denied the request he made therein to discharge Logan, which may have

16

suggested to Armijo that it would have been futile to ask the court at that point to appoint new counsel. (See *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648 [discussing futility exception to abandonment rule].) Under these circumstances, we do not believe that the fault for the trial court's failure to hold a *Marsden* hearing should rest with Armijo. Therefore, we decline to find that Armijo abandoned his *Marsden* request through a failure to press for a hearing on the request or acquiescence to the court's failure to hold a hearing.

C.    *The Trial Court's Error in Failing To Hold a* Marsden *Hearing Was Not Harmless Beyond a Reasonable Doubt*

Based on our review of the record, it is possible that Armijo may not have been able to show at a *Marsden* hearing either the inadequacy of representation by Logan or an irreconcilable conflict with her. However, because the record largely is limited to Armijo's complaint letters, we do not know what other evidence Armijo could have offered had he been afforded a *Marsden* hearing. It is conceivable that he could have provided at the hearing "knowledge of conduct and events relevant to the diligence and competence of his attorney[s] which are not apparent" from the "bare complaint[s]" and that would have tipped the balance in favor of appointment of substitute counsel. (*Marsden*, *supra*, 2 Cal.3d at pp. 123, 125.) Under these circumstances, we "cannot speculate upon the basis of a silent record that the trial court, after listening to defendant's reasons, would decide the appointment of new counsel was unnecessary." (*People v. Winbush* (1988) 205 Cal.App.3d 987, 991.) Thus, the trial court's error in failing to hold a *Marsden* hearing in response

17

to Armijo's letter about Logan cannot be treated as harmless beyond a reasonable doubt.

Because of the potential that Armijo could demonstrate inadequate representation or an irreconcilable conflict at a *Marsden* hearing, we conditionally reverse the judgment and remand to the trial court with instructions to hold a *Marsden* hearing.  If the trial court finds after the hearing that Armijo demonstrated ineffective assistance or an irreconcilable conflict, the court shall appoint new counsel to assist Armijo in filing a motion to withdraw his plea or any other such motions newly appointed counsel may deem appropriate.  However, the trial court shall reinstate the judgment if (1) the court finds after the *Marsden* hearing that Armijo failed to demonstrate ineffective assistance or an irreconcilable conflict; or (2) the court grants Armijo's request for substitute appointed counsel, but either substitute counsel declines to file a motion to withdraw the plea or other appropriate motion, or the court denies any such motion.[6]

---

[6]  Our instructions to the trial court on remand are drawn from *Sanchez*, *supra*, 53 Cal.4th at page 92.  That case delineates what is to happen on remand following a reversal of a plea-based conviction on account of the trial court's failure to hold a *Marsden* hearing.  Consistent with *Sanchez*, our instructions reflect  a "conditional reversal" that contemplates the possible reinstatement of the judgment and conviction.  (*People v. Eastman*, *supra*, 146 Cal.App.4th at p. 691.)

## DISPOSITION

The judgment is conditionally reversed and the case is remanded with directions to the trial court to hold a *Marsden* hearing, and, if Armijo's request for substitute appointed counsel is granted, to appoint new counsel to assist Armijo and to entertain such motions as newly appointed counsel may file. The court shall reinstate the judgment if: (1) Armijo's request is denied, or (2) the request is granted but substitute counsel declines to file a motion to withdraw the plea or other appropriate motion, or the court denies any such motion.

SMALL, J.*

We concur:

ZELON, Acting P. J.

SEGAL, J.

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19