Filed 5/9/23 P. v. Hoobler CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | C094886 |
| Plaintiff and Respondent, | (Super. Ct. No. F21-000030) |
| v. | |
| BRIAN ALAN HOOBLER, | |
| Defendant and Appellant. | |

Defendant Brian Alan Hoobler was found guilty of multiple counts of lewd and lascivious acts on a child under the age of 14 years old, some of which involved force, and aggravated sexual assault on a child under the age of 14 years old. He committed all these offenses against his stepdaughter over the course of approximately seven years. On appeal, defendant contends the trial court erred by not holding a postconviction *Marsden*[1]

---

[1]    *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

1

hearing. He further contends he must be resentenced on three of his convictions because of the passage of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) following his conviction. We agree defendant's case must be remanded for resentencing, but otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant married the victim's mother when the victim was approximately two years old. The victim lived predominantly with the couple, except when she would visit her father in Utah over the summers and when she lived with her father for half of one school year. The victim later moved in with her father when she was 12 years old.

When the victim was four or five years old, defendant began sexually abusing her nearly every day while her mother was at work. With few exceptions, the incidents of abuse occurred the same way. Defendant would bring the victim into his bedroom and place her on the side of the bed. He would put his thumbs near her eyes and run them down to her shoulders, then down her arms and legs. When the victim was unclothed, defendant would attempt to penetrate her vagina with his penis. After noting he could not fit inside of her, defendant would prop his erect penis against his stomach and lay the victim on top of him. He would then make the victim move up and down until he ejaculated. Often, defendant would make the victim orally copulate him or he would digitally penetrate her vagina.

The victim moved to a different county with her mother and defendant the summer after the third grade. Defendant found semi-regular employment and no longer watched the victim every day. As a result, the sexual abuse decreased to two or three days a week, still occurring while the victim's mother was not home. The abuse followed the same pattern as it did before, starting with the touching ritual. When the victim was nine or 10 years old, instead of having her sit on his penis, defendant would have sexual intercourse with the victim. Defendant also made the victim orally copulate him on several occasions and digitally penetrated her vagina.

2

This abuse occurred until the victim was 11 or 12 years old, and she moved in permanently with her father. Throughout all the years of abuse, defendant told the victim she had to keep his conduct a secret and if she told anybody about the conduct she would be taken from her family and her mother would kill herself.

The jury found defendant guilty of one count of lewd and lascivious acts on a child under the age of 14 years old, five counts of forcible lewd and lascivious acts on a child under the age of 14 years old, five counts of aggravated assault involving oral copulation, and two counts of aggravated assault involving rape.

On July 23, 2021, defendant's sentencing hearing began with the trial court hearing victim impact statements. The sentencing hearing was ultimately continued until August 23, 2021. On July 12, 2021, defendant wrote a letter to the trial court, which was mailed on July 27, 2012. The trial court received the letter on July 29, 2021, and addressed the parties regarding the letter at the continued sentencing hearing on August 23, 2021. Defense counsel acknowledged that defendant had expressed many of these same dissatisfactions with him and that he was not surprised by the letter. Defendant's letter provided that "[m]any very important facts and details were left out from the defense presentation to the jury. Plus, I thought the prosecution and this court would conduct this trial 'fair and unbias[ed].' The prosecution literally told lies to the jury regarding my disability and physical capacity. Important medical information was left completely out from jury and court [consideration] including 12 surgery scars and photos cru[c]ial to my defense. The prosecution led the jury into this decision against me with deception and many untruthful statements. Also, I was mislead [*sic*] by my attorney who never tried one of these cases, was clearly inexperienced and unprepared to take on this trial. I[']m not a child molester and pervert and never touched the accuser or any other child this way ever, or even thought about it. It turns my stomach thinking about it now! I[']m asking you to excuse this case or at the very least grant me a retrial, one that

3

is fair and unbias[ed] and one with a[n] experienced attorney in these cases to represent me." (Capitalization omitted.)

Based on this letter, the trial court asked defendant multiple times whether he was asking for his current attorney to be relieved as counsel and for another attorney to be appointed. Although asked to answer the question with a simple yes or no, defendant did not and, instead, requested a different attorney be appointed to advise him of his rights. Both defense counsel and the prosecution did not believe defendant was asking for a *Marsden* hearing, and thus the trial court ruled defendant was not entitled to a *Marsden* hearing.

When pronouncing sentence, the trial court indicated it would, for the six offenses subject to determinate sentencing law, select the upper terms for three of the offenses and the lower terms for the other three offenses. The trial court believed the upper term was warranted for three of the offenses "because of the nature of the sexual offenses of conviction themselves. The conduct in [the other convictions] while serious[,] w[as] qualitatively not as aggravated as the conduct in [those for which the trial court selected the upper term]."

The trial court then stated that it based its selection of the upper term on (1) defendant's conduct, which indicated a serious potential danger to society; (2) defendant's prior two prison commitments; (3) defendant's prior unsatisfactory performance on supervision; and (4) defendant's "aggravated and protracted sexual abuse[, which] caused extraordinary, prolonged and profound emotional and psychological harm to the victim as well as the victim's biological mother." The trial court found no factors in mitigation. "Finally, the Court . . . selected the upper term [for the three offenses] in order to protect society, punish [defendant], deter [defendant] from future offenses, deter others from criminal conduct by demonstrating its consequences and to prevent [defendant] from committing new crimes by isolating him for the period of incarceration associated with the determinant sentence." The trial court imposed a

4

consecutive 15-year-to-life sentence for each of defendant's remaining convictions, resulting in an aggregate sentence of 105 years to life, plus 42 years.

Defendant appeals.

## DISCUSSION

### I

### *Defendant Was Not Entitled To A* Marsden *Hearing*

Defendant argues the trial court failed to hold a postconviction *Marsden* hearing, violating his Sixth and Fourteenth Amendment rights. We disagree.

A criminal defendant has the right to assistance of counsel. (Cal. Const., art. I, § 15; U.S. Const., 6th Amend.; *Marsden*, *supra*, 2 Cal.3d at p. 123.) This right may include the right to have appointed counsel discharged if it is shown that failure to do so would substantially impair or deny the right to assistance of counsel. (*Marsden*, at p. 123.) "When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation . . . the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604.)

Our Supreme Court has recognized that there must be " 'some clear indication by [a] defendant that he wants a substitute attorney' before the trial court [is required to] conduct a hearing on such [a] request." (*People v. O'Malley* (2016) 62 Cal.4th 944, 1005.) The need for a *Marsden* hearing arises when a defendant seeks to discharge his appointed counsel and substitute another and asserts inadequate representation. A defendant must clearly indicate he wants substitute counsel to trigger a *Marsden* hearing. (*People v. Sanchez* (2011) 53 Cal.4th 80, 87-90 & fn. 3; see also *People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8 ["We do not necessarily require a proper and formal legal motion, but at least some clear indication by [the] defendant that he wants a substitute attorney"].) A trial court has no sua sponte duty to initiate a *Marsden* inquiry. (*People v. Leonard* (2000) 78 Cal.App.4th 776, 787.)

5

In the letter defendant sent to the trial court, there was no clear indication he wanted to relieve his counsel and appoint a new attorney. It is true defendant said he believed his attorney misled him as to his experience with sex offense cases and his attorney failed to robustly argue defendant's disability as a defense. But, despite these assertions, defendant simply did not ask for counsel to be relieved. Instead, defendant asked for a retrial. (Cf. *People v. Armijo* (2017) 10 Cal.App.5th 1171, 1181 [the court found a clear indication where the defendant explicitly stated in a letter he sent to the court, "I am requesting that you assign my case to a state-appointed attorney"].) It is unclear whether defendant's request for a retrial was connected to his counsel's purported deficiencies or defendant's belief the trial court and the prosecution were biased against him. Even if defendant's request for a new trial was linked to his counsel's alleged failures, "[t]he mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing." (*People v. Lucky*, *supra*, 45 Cal.3d at p. 281.)

Defendant's clarification of the letter at the August 23, 2021 sentencing hearing does not change this analysis. The trial court asked defendant four times if he wanted his attorney to be relieved as counsel and for new counsel to be appointed, but defendant never said yes. In fact, defendant never directly answered the question. Defendant repeatedly responded by saying he wanted different counsel to advise him about his rights before he could tell the trial court whether he wanted new counsel to represent him. As in defendant's letter, the discussion provided no clear indication that defendant wanted the court to relieve his counsel and appoint a new attorney. Thus, the trial court was under no duty to conduct a hearing on the matter. (See *People v. O'Malley*, *supra*, 62 Cal.4th at p. 1005.)

A broader context of the proceedings supports this conclusion. Defendant knew how to clearly request a *Marsden* hearing. The trial court had previously granted his request and conducted a hearing on March 18, 2021. The subject of defense counsel's

6

experience was vetted at that time, and the trial court denied the *Marsden* motion. The July 12, 2021 letter raised the same issues, albeit after trial. Moreover, the record here reveals that the sentencing hearing began on July 23, 2021, and defendant made no request then, despite having composed the letter to the trial court complaining about trial counsel. When the hearing resumed on August 23, 2021, the trial court heard argument regarding sentencing issues for an extended period, even up to a recess, without a word from defendant. It was only upon return from the recess that the trial court—and not defendant—raised the issue of the July 12, 2021 letter, and defendant's possible request to substitute counsel. As noted, the trial court tried to clarify defendant's position to no avail. In sum, defendant did not give a clear indication he wanted to substitute counsel for all purposes.

Defendant analogizes his case to *People v. Reed* (2010) 183 Cal.App.4th 1137, and claims both he and the defendant in *Reed* were entitled to a *Marsden* hearing because they clearly told the trial court that they wanted a new trial based on their counsels' ineffectiveness. (*Id.* at pp. 1141-1142.) Defendant's reliance on *Reed* is misplaced. There, Division Five of the Court of Appeal, First Appellate District held that the defendant's "expressed desire to pursue a motion for new trial based on counsel's incompetence," plus "the fact that defense counsel said, 'I cannot make [the motion] for him,' " viewed in "the context of [the defendant's] prior unsuccessful *Marsden* motions, made it sufficiently clear that [he] was . . . requesting substitute counsel." (*Id.* at pp. 1145-1146.)

Initially, we note our Supreme Court disapproves of conclusions like that in *Reed* implying that a *Marsden* hearing can be triggered by anything less than a clear indication that the defendant wants a substitute attorney, such as a defendant's motion for a new trial based on ineffective assistance of counsel. (*People v. Sanchez*, *supra*, 53 Cal.4th at p. 90, fn. 3.) Moreover, *Reed* is distinguishable because only the first of its three elements (expressed desire for a new trial) is present in this case. (*People v. Reed*, *supra*,

7

183 Cal.App.4th at pp. 1145-1146.) Defendant did not attribute his request for a new trial exclusively to his counsel's deficient performance, and his attorney did not believe defendant was requesting new counsel. "In sum, since defendant never moved for the discharge or substitution of his court-appointed attorney, and declined several opportunities afforded him by the court to state any grounds for dissatisfaction with [his attorney], the trial court was under no duty to make any further inquiries." (*People v. Lucky*, *supra*, 45 Cal.3d at p. 283.) For these reasons, the trial court did not err in declining to hold a *Marsden* hearing.

In any event, failure to hold a *Marsden* hearing is not per se reversible as long as the reasons for a defendant's request to substitute counsel are apparent from the record. (See *People v. Chavez* (1980) 26 Cal.3d 334, 347-349 [the error was deemed harmless because there was "no evidence of disagreement or lack of rapport between [the] defendant and counsel" and, therefore, there was no basis upon which to conclude that the defense had suffered]; see also *People v. Washington* (1994) 27 Cal.App.4th 940, 942-944 [the error in failing to hold a *Marsden* hearing was harmless when the trial court heard the defendant's motion for a new trial based on ineffective assistance of counsel and the appellate court could conclude from the new trial motion that there was no basis for concluding the defendant was represented ineffectively or would have experienced a more favorable result at sentencing].)

Here, defendant supplied the trial court with the basis for believing his counsel was ineffective—inexperience and failure to rely more heavily on his disability as a defense. In making these arguments, defendant has made no showing that his *Marsden* motion would have been granted nor has he demonstrated a basis to conclude he would have obtained a result more favorable to him had the *Marsden* motion been heard. Appellate counsel has not raised an ineffective assistance of counsel argument or challenged any portion of defendant's sentence under the law applicable at the time of defendant's sentencing. Defendant received one *Marsden* hearing, where it is clear the

8

dispute with counsel always centered on counsel's experience, which the trial court could reasonably assess as adequate. Thus, even if the trial court should have entertained a *Marsden* motion, defendant has not demonstrated beyond a reasonable doubt that the motion would have been granted.

## II

*The Case Must Be Remanded For Resentencing*

Defendant contends Senate Bill No. 567 (2021-2022 Reg. Sess.) applies retroactively to his case and requires remand for a new sentencing hearing regarding the three offenses for which the trial court imposed the upper term. The People correctly concede that changes enacted by Senate Bill No. 567 apply retroactively to this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109; see *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.) The People argue, however, that defendant is unable to benefit from the changes because it is reasonably likely the trial court would have selected the upper term for each of the three offenses considering only facts related to defendant's criminal history. We agree with defendant that remand is mandated.

Senate Bill No. 567 (2021-2022 Reg. Sess.) amended Penal Code section 1170, subdivision (b) so that, among other things, aggravating circumstances now only justify the imposition of an upper term sentence if "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) The amended statute also adds a third acceptable method of factfinding, permitting courts to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

The People acknowledge that some of the factors the trial court relied on were impermissible to support the imposition of the upper term under the current version of the

9

law. They argue instead that the facts underlying defendant's criminal history were substantiated by the probation report, and the trial court would have made the same sentencing choices based only on those facts. The problem with the People's argument is that they point only to circumstances that would have equally served to aggravate the three determinate sentences for which the trial court selected the low term. When it came to selecting the upper term for the three other offenses, the trial court indicated it was because of the qualitative difference between the upper term offenses compared to the others. The People do not argue it is certain beyond a reasonable doubt that a jury would have found this factor true; and we agree given the subjective nature of the trial court's finding. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 839-840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].) Given the trial court's reliance on the qualitative difference in defendant's conduct when elevating defendant's sentence to the upper term, we can only speculate on whether the trial court would have exercised its discretion in the same way had it known it was unable to consider that factor when imposing sentence. (See *People v. Zabelle*, *supra*, 80 Cal.App.5th at p. 1112 ["we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error"].) Accordingly, we must remand the matter for resentencing.

10

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded to the trial court for resentencing consistent with current law. The judgment is otherwise affirmed.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
EARL, J.

/s/_____
McADAM, J.*

---

*    Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11