Filed 9/4/24  P. v. Wardlow-Smith CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CAMILLE AUTUMN WARDLOW-SMITH,<br><br>    Defendant and Appellant. | A169532<br><br>(Del Norte County Super. Ct. No. CRF-22-9408) |

In August 2022, defendant Camille Autumn Wardlow-Smith pleaded guilty to carjacking and misdemeanor burglary and was placed on three years formal probation.  In February 2023, the probation department petitioned to revoke her probation, alleging that she had failed to check in with the probation department or report for mental health and drug abuse assessments, and had three times been arrested and subsequently violated written promises to appear in court.  The trial court sustained the allegations, revoked Wardlow-Smith's probation, and sentenced her to three years in state prison.  Wardlow-Smith argues that the trial court erred in failing to hold a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) after she stated at a hearing, "I think I need a new lawyer."  We agree, and we conditionally reverse and remand for a *Marsden* hearing.

1

## BACKGROUND

On July 29, 2022, the Del Norte County District Attorney filed an amended felony complaint charging Wardlow-Smith with carjacking (Pen. Code[1], § 215, subd. (a)) (count 1); vehicle theft (Veh. Code, § 10851, subd. (a)) (count 2); and second degree robbery (§ 211) (count 3).[2]  On August 15, Wardlow-Smith pleaded guilty to felony carjacking (count 1) and misdemeanor burglary in an unrelated case (count 1 in No. CRF229432).  On September 22, the trial court sentenced Wardlow-Smith to 120 days in county jail and placed her on three years of formal probation.

On February 6, 2023, the probation department petitioned to revoke Wardlow-Smith's probation, alleging that she had failed to:  (1) check in with the probation department within one day of her release from custody on November 15, 2022; (2) check in with probation in December 2022; (3) check in with probation in January 2023; (4) report for a mental health assessment within two business days of her release from custody; and (5) report to the alcohol and other drugs program within two business days of her release from custody.

On March 7, the district attorney filed a petition to revoke probation containing six allegations that on February 21 and 22, Wardlow-Smith had trespassed into Safeway, took food and alcohol without paying, and had methamphetamine and drug paraphernalia on her person.

On August 1, the district attorney again petitioned to revoke Wardlow-Smith's probation, alleging that she had been arrested on February 17, April

---

[1] Further undesignated statutory references are to the Penal Code.

[2] We omit any discussion of the facts underlying the charged offenses as they are not relevant to the single issue on appeal.

9, and May 17, and then willfully violated written promises to appear at corresponding court dates on March 17, May 9, and June 16, in violation of section 853.7.

At a hearing the next day, the prosecution moved to dismiss the March 7 petition without prejudice. Defense counsel indicated that she did not have the February 6 petition, and stated, "[A]t the time that I talked to [Wardlow-Smith], I didn't have the one that was filed yesterday. So she has no idea what those two petitions contain." The prosecutor requested that a hearing be set for August 8, noting, "[t]hese will be extremely quick allegations to prove. She didn't come into court and hasn't been checking in or doing anything she was supposed to do." Wardlow-Smith then interjected: "Can I just agree to that, and then we can go from there that I want to clean up my life?" Defense counsel explained that "[s]he's indicating right now that she wants to admit and just go forward. But I don't—I don't want her to admit until she knows exactly what she's admitting to and gone over the petitions." The trial court set a hearing for August 7 and added, "If she wants to admit, we can deal with it then."

On August 7, the following exchange took place:

"THE COURT: And this is on for setting of the probation violation. Looks like there's an arraignment, which is scheduled for tomorrow. Let's see if we can take care of that.

"MS. OLSON [defense counsel]: I believe she's been arraigned on all the petitions that were filed. In fact, the D.A.'s office had dismissed the first petition. And the only one we would go forward on for a hearing at this point is the August 1st, 2023, petition.

"THE COURT: All right. I apologize. It looks like that was vacated on the last court appearance.

3

"MS. OLSON: Okay. Thank you.

"THE COURT: I'll figure out how to read the minutes.

"MS. OLSON: I was hoping that—my client is not prepared to admit the allegations in the August 1st petition. So I was hoping that we could just set it for a hearing.

"THE DEFENDANT: That's not true. I think I need a new lawyer.

"THE BAILIFF: Please don't interrupt. Don't disrespect the court.

"THE DEFENDANT: We just sat here and talked about it.

"THE BAILIFF: Do not interrupt. Listen.

"THE COURT: Let's go ahead and set it for a hearing. What will happen is they'll talk to you about it if you do want to admit or something.

"THE DEFENDANT: Admit what?

"THE COURT: Or if it doesn't go to a hearing, then we can accomplish that. Okay. All right.

"Go ahead and set it for probation revocation hearing."

After defense counsel requested a hearing date of August 29, defendant said:

"THE DEFENDANT: All this for having a dope pipe? [¶] . . . Like, seriously. All this for carrying meth paraphernalia with nothing in it? That's a placebo effect. Like, seriously." She was then escorted from the courtroom, and the court set a revocation hearing for August 29.

On August 28, at a brief readiness conference, defense counsel indicated that she "was prepared to confirm [the probation violation] hearing as I went and saw my client, and she does not appear that she would be willing to admit the violations that are alleged in the two petitions." The court confirmed the hearing for the next day.

4

At the hearing on August 29, Noah Chankin, a probation officer with the Del Norte County Probation Department, testified briefly that Wardlow-Smith had never checked in with the probation department after her release from custody and that she had never reported for a mental health or alcohol and drug abuse assessment. At the prosecution's request, the court took judicial notice of the terms of Wardlow-Smith's probation, her signed, written promises to appear in court on March 17, May 9, and June 16, and the minutes from each of those court dates showing that Wardlow did not appear. The trial court found the allegations of the February 6 and August 1 petitions true by a preponderance of the evidence.

Defense counsel then made the following statement: "I was going to ask if we could put this out for sentencing. In talking with my client and going back through and rereading the police reports and the previous sentencing report, I think there's some mental health issues. I don't think at this point they rise to, like, a [section] 1368 level, but I would like to have her evaluated while she's in custody and hopefully use any information that's gleaned from a psychological evaluation in mitigation at sentencing." The court set a September 19 hearing for setting of sentencing.

On September 19, defense counsel indicated she had still not "received a report back from Dr. Limon," and the court set a further hearing for October 19.

On October 19, defense counsel had still not received the report from Dr. Limon. Wardlow-Smith addressed the court: "I just want to say, can we just go forward with sentencing. I don't need to see Limon. If it's going to be nine years, let's do the nine years. Three years, four, five, whatever it is. Can we just go forward with sentencing so I can get to where I'm going?" Defense counsel explained, "I still think trying to argue for the mitigated

5

term of three years is what's best for my client, despite what she's saying," and that "with Dr. Limon's report I can argue for three years, as opposed to five," after which Wardlow-Smith interjected, "Like I said, I don't mind the time." She then stated, "I have read and reviewed nothing from my attorney," and "Your Honor, don't you think I should have reports or mail from my attorney or something stating the reason I'm in jail?" The court explained that defense counsel was "waiting on Dr. Limon to get a report done" and "right now in your case there's nothing going on," and set a sentencing hearing for November 2.

At sentencing on November 2, defense counsel still had not received Dr. Limon's report. However, defense counsel indicated that the prosecutor told her that he would argue in favor of the lower term sentence, and that therefore the report from Dr. Limon would not be necessary because "the reason I wanted her to do it is so I would have . . . what was needed to argue for the mitigated term." She continued, "And I know her family is here, and they were concerned about her competency. But I did talk to her very briefly about that as well. And, clearly, she understands the court proceedings. [¶] And she's asking me not to make a [section] 1368 Motion. I think, based on her reasoning, I don't—I don't have what's necessary to overrule that and make the motion at this time."

The prosecution then argued in favor of the lower term sentence of three years on the carjacking count based on Wardlow-Smith's lack of criminal convictions and "current mental health issues." Defense counsel noted that her client "just wants to be sentenced and go forward," that the prosecution's recommendation was "the lowest consequence she could get at this point in time," and submitted on the prosecution's recommendation. The

6

trial court then terminated probation and sentenced Wardlow-Smith to the lower term of three years.  And then:

"THE DEFENDANT:  I would like to appeal.  So how do I get that paperwork?

"MS. OLSON:  I can file a notice of appeal for you.  And then the appellate jurisdiction will—

"THE DEFENDANT:  I'd like to change my attorney as well.

"THE COURT:  What?

"THE DEFENDANT:  I would like to change my attorney as well.

"MS. OLSON:  They'll appoint an appellate attorney.

"THE COURT:  They'll appoint an appellate attorney.

"THE DEFENDANT:  All right.  Thank you."

Wardlow-Smith filed a notice of appeal.

## DISCUSSION

Wardlow-Smith argues that the trial court committed prejudicial error in failing to hold a *Marsden* hearing after she stated at the August 7 hearing that, "I think I need a new lawyer."  We agree.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation—i.e., makes what is commonly called a *Marsden* motion [*Marsden*, *supra*,] 2 Cal.3d 118—the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance.  A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."  (*People v. Smith* (2003) 30 Cal.4th 581, 604.)

7

The trial court's duty to hold a *Marsden* hearing does not "require a proper and formal legal motion, but at least some clear indication by defendant that he wants a substitute attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8; see *People v. Sanchez* (2011) 53 Cal.4th 80, 89–90.) Although the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney is within the discretion of the trial court, the court "cannot thoughtfully exercise its discretion . . . without listening to [defendant's] reasons for requesting a change of attorneys. A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, '[w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choice of trial tactics and strategy.' [Citation.] Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' " (*Marsden*, *supra*, 2 Cal.3d at pp. 123–124; see *People v. Chavez* (1980) 26 Cal.3d 334, 346 ["[A] refusal by the

8

trial court to afford a defendant an opportunity to set forth the reasons underlying his request for the substitution of appointed counsel constitutes an abuse of discretion by the court"].)

The Attorney General first argues that Wardlow-Smith's statement— "That's not true.  I think I need a new lawyer"—was not a clear indication of a desire for substitute counsel sufficient to trigger the trial court's *Marsden* obligations.  We cannot agree.  Other than the prefatory "I think," Wardlow-Smith could hardly have been more clear that she wanted substitute counsel. (See *Marsden, supra*, 2 Cal.3d at p. 124 ["The semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right"].)

The Attorney General next argues that Wardlow-Smith's statement at best reflected a difference of opinion between her and her attorney over trial tactics, i.e., whether to admit the allegations of the August 1 petition without having reviewed them.  (See *People v. Lucky, supra*, 45 Cal.3d at p. 281 ["The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing"].)  But Wardlow-Smith disagreed that she was prepared to admit those allegations ("That's not true") separately from her request for substitute counsel ("I think I need a new lawyer").  And the balance of the record does not clearly support the Attorney General's contention.  For example, it shows that Wardlow-Smith disagreed with her attorney about whether sentencing should be delayed for a mental health evaluation to support an argument for a lower term sentence and whether counsel should declare a doubt as to her competency.  She also told the court, "I have read and reviewed nothing from my attorney," and at the very conclusion of the proceedings—almost three months after her initial request

9

for a *Marsden* hearing—again asked for substitute counsel, suggesting that her dissatisfaction with her attorney may have extended well beyond any specific disagreement about whether to admit the allegations of the August 1 petition. In any event, the Attorney General does not cite any authority for the proposition that we may make assumptions about a defendant's reasons for requesting new counsel and on that basis excuse the trial court's failure to hold a *Marsden* hearing to develop the record on precisely that question. (See *People v. Armijo* (2017) 10 Cal.App.5th 1171, 1183 ["we 'cannot speculate upon the basis of a silent record that the trial court, after listening to defendant's reasons, would decide the appointment of new counsel was unnecessary' "].)

Having concluded that the trial court erred in failing to hold a *Marsden* hearing, we turn to the question of prejudice. Reversal is required unless the record shows that the failure to hold a hearing was harmless beyond a reasonable doubt. (*Marsden*, *supra*, 2 Cal.3d at p. 126, citing *Chapman v. California* (1967) 386 U.S. 18; *People v. Reed* (2010) 183 Cal.App.4th 1137, 1148; *People v. Chavez, supra*, 26 Cal.3d at pp. 348–349.) That demanding standard is not met here.

The Attorney General again contends that Wardlow-Smith's dissatisfaction with her attorney had only to do with the statement that she was not prepared to admit the allegations in the August 1 petition, and that because she "was permitted her desired outcome—to be found in violation of the terms of her probation," any error was harmless beyond a reasonable doubt. As already discussed, we cannot agree that Wardlow-Smith's disagreement with her counsel was so limited, and we decline to speculate as to what would have happened had she been permitted to explain the basis for

10

her request for substitute counsel.  (See *People v. Armijo, supra*, 10 Cal.App.5th at p. 1183.)

In addition, the record does not show that failure to hold a *Marsden* hearing was harmless beyond a reasonable doubt because Wardlow-Smith's disagreement with her counsel appears to have extended to the question of whether to declare a doubt as to her competency.  (See *People v. Solorzano* (2005) 126 Cal.App.4th 1063, 1071 [*Marsden* error not harmless where it may have affected outcome of competency proceedings].)  At the August 7 hearing, Wardlow-Smith expressed her belief that the proceedings were "[a]ll . . . for having a dope pipe," despite the petition making those particular allegations having been dismissed five days earlier.  On August 29, defense counsel stated, "In talking with my client and going back through and rereading the police reports and the previous sentencing report, I think there's some mental health issues," but concluded, "I don't think at this point they rise to, like, a [section] 1368 level."[3]  Over six weeks later, on October 19, Wardlow-Smith suggested in court that she still did not understand the "reason I'm in jail." And at sentencing on November 2, counsel indicated that Wardlow-Smith's family was "concerned about her competency," but that she was "asking me not to make a [section] 1368 Motion . . . based on her reasoning, I don't . . . have what's necessary to overrule that and make the motion at this time." Ultimately, defense counsel never declared a doubt as to Wardlow-Smith's competency under section 1368 and elected to proceed with sentencing

_____

[3] Indeed, the presentence investigation report for the offenses underlying Wardlow-Smith's grant of probation noted that she had "untreated systemic mental health issues," "untreated poly substance abuse," was "not stabilized on medication," "states that she sees and talks to 'dead people,' " and "said that she does not have a grasp on reality and feels like she is in a video game."

11

without the mental health evaluation requested from Dr. Limon.  On this record, we cannot conclude that the trial court's failure to hold a *Marsden* hearing at the outset of the proceedings on August 7 was harmless beyond a reasonable doubt.  (See *People v. Solorzano, supra,* 126 Cal.App.4th at p. 1071; *People v. Masterson* (1994) 8 Cal.4th 965, 971 [counsel may move for evaluation of defendant's competency over defendant's objection].)

Because we cannot conclude that the trial court's failure to hold a *Marsden* hearing was harmless beyond a reasonable doubt, a conditional reversal with directions to hold such a hearing on remand is the "proper disposition."  (*People v. Sanchez, supra,* 53 Cal.4th at p. 92; see *People v. Armijo, supra,* 10 Cal.App.5th at pp. 1183–1184.)

## DISPOSITION

The judgment is conditionally reversed, and the case is remanded with directions to the trial court to conduct a *Marsden* hearing.  If defendant's request for substitute counsel is granted, the trial court is directed to appoint new counsel to assist defendant and to entertain such motions as newly appointed counsel may file.  The court shall reinstate the judgment if, after a hearing:  (1) defendant's request is denied; (2) the request is granted but substitute counsel declines to file any further motions; or (3) the trial court denies any such motion filed.

_____

RICHMAN, ACTING P. J.

WE CONCUR:

_____

MILLER, J.

_____

DESAUTELS, J.

*The People v. Wardlow-Smith* (A169532)

13