Filed 10/13/23 P. v. Estrada CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

<table>
<tr>
<td>
THE PEOPLE,<br><br>
    Plaintiff and Respondent,<br><br>
v.<br><br>
MARK ANTHONY ESTRADA,<br><br>
    Defendant and Appellant.
</td>
<td>
A165383<br><br>
(Alameda County<br>
Super. Ct. No. 464391)
</td>
</tr>
</table>

Defendant Mark Estrada killed a Hayward police officer during a 2015 traffic stop. Several years later, Estrada pleaded no contest to one count of first degree murder and an accompanying firearm enhancement. Before judgment was entered, he unsuccessfully moved to withdraw the plea, and the trial court sentenced him to the stipulated term of 50 years to life in prison.

On appeal, Estrada claims that his trial counsel rendered ineffective assistance of counsel by not supporting or arguing his motion to withdraw the plea, thereby "abandon[ing] his defense at a critical portion of the case." He also claims that the trial court erred by not fulfilling its promise to appoint another attorney to assist him with that motion or, alternatively, by failing to hold a *Marsden* hearing.[1] Finally, he claims that he made a prima facie

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

1

showing that the plea was coercive, based on his declaration that defense counsel pressured him to take the plea deal. We affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not relevant to the issues on appeal. Briefly, early on the morning of July 22, 2015, Hayward Police Sergeant Scott Lunger stopped a truck, later identified as Estrada's father's, that had been "swerving all over the road."[2] A second police officer arrived in time to see Sergeant Lunger approach the truck. After Sergeant Lunger said, "[W]hoa, whoa, whoa," the second officer heard a gunshot and saw the sergeant fall to the ground. Meanwhile, the truck drove away as the second officer chased after it on foot, shooting at it.

Sergeant Lunger died from a gunshot wound to the face. Estrada, who was 21 years old and had also been shot, was soon apprehended. The gun used to kill Sergeant Lunger was recovered near the scene, and five cartridge casings fired from it were found in Estrada's home.

Two years later, the Alameda County District Attorney filed an information charging Estrada with one count of murder, with an accompanying allegation that he personally and intentionally discharged a firearm causing death.[3] Several special circumstances rendering Estrada eligible for the death penalty and/or a sentence of life without the possibility

---

[2] The underlying facts are drawn from the preliminary hearing transcript, to which Estrada stipulated as the factual basis for the plea.

[3] The murder count was brought under Penal Code section 187, subdivision (a), and the firearm enhancement was alleged under Penal Code section 12022.53, subdivision (d). All further statutory references are to the Penal Code unless otherwise noted.

2

of parole (LWOP) based on the murder were also alleged.[4]  Finally, Estrada was charged with two felony counts related to his possession of the firearm.[5]

After significant delays, including a mistrial declared in March 2020 due to the COVID-19 pandemic, jury selection began in December 2021.[6]  On February 1, 2022, the parties notified the trial court that they had reached a plea agreement.  Under the agreement, Estrada then pleaded no contest to one count of first degree murder and admitted the accompanying firearm allegation in exchange for a sentence of 50 years to life in prison, and the special circumstances and remaining charges were dismissed.

On March 2, 2022, a few weeks before sentencing was to occur, the trial court placed the matter on calendar at the request of Estrada's trial counsel (March 2 hearing).  At the hearing, the court stated that it understood Estrada wanted to speak to it, and his counsel added, "And I think that he was also going to request through me that if the Court would possibly appoint a person—I don't see grounds to withdraw the plea, but I would maybe

---

[4] The special circumstances rendering Estrada death-eligible were alleged under section 190.2, subdivision (a)(7) (murder of on-duty peace officer), (15) (murder by lying in wait), and (21) (drive-by murder).  He was also alleged to be eligible for an LWOP sentence under section 190, subdivision (c), which applies to a defendant who commits second degree murder of a peace officer under specified circumstances.

[5] The first charge was carrying a concealed firearm in a vehicle under section 25400, subdivision (a)(1), with an allegation under subdivision (c)(6) of the statute that the firearm was unregistered and loaded.  The second charge was carrying a loaded firearm in public under section 25850, subdivision (a), with an allegation under subdivision (c)(6) of the statute that the firearm was unregistered.

[6] The People initially sought the death penalty, and in 2020, Estrada filed two unsuccessful petitions for a writ of mandate in this court based on selection of a death-eligible jury for the trial that ended in a mistrial. (*Estrada v. Superior Court of Alameda* (Jun. 18, 2020, A160148); *Estrada v. Superior Court of Alameda* (Jan. 30, 2020, A159445).)

3

request that somebody be appointed in an abundance of caution to see if there's grounds to withdraw the plea." After Estrada confirmed that he "want[ed] the Court to appoint [him] a lawyer to look at the plea transcript to determine whether or not there's sufficient grounds to set aside this plea," the court agreed to "make an appointment. We'll find out how we go about [it] to get someone from the bar to take a look at the plea transcript as well as talk to Mr. Estrada."

The record does not indicate that another attorney was appointed or otherwise became involved in helping Estrada move to withdraw the plea. Instead, about two weeks after the possibility of appointing another attorney was raised, Estrada's trial counsel filed a motion to withdraw the plea. The motion's argument section stated only that a guilty plea could be set aside upon a showing of good cause, which exists "when the defendant demonstrates that he was operating under duress, to the extent that it overcame the exercise of his free judgment," and asked the trial court to consider Estrada's accompanying declaration giving "his reasons for entering the plea and allowing him to withdraw his plea."

In his declaration, Estrada stated that he always intended "to take the case to trial," but he "felt pressured to take the deal" and "rushed" because his trial counsel gave him only a day to make the decision. He claimed that while he was deciding whether to take the deal, counsel "tried to get [him] to feel guilty about taking the case to trial, by talking about putting the victim's family through a trial and having them look at pictures of the victim shot." Estrada also averred that counsel "had an angry outburst" and threatened to "call [his] family and tell them that they were committing a criminal action by telling [him] not to take the plea." After this, Estrada and his family were "afraid" of counsel, and he "felt pressured to take the plea." Finally, he

4

"feared that [counsel] was not giving [him] the best defense" and "was not really going to do her best to defend [him]," based on certain evidentiary issues she identified and her statement "that she would [not] get paid more if [they] took the case to [trial] than if [they] entered the no contest plea."

On March 28, 2022, the trial court held a hearing on Estrada's motion to withdraw the plea (March 28 hearing). The hearing primarily consisted of the court's "voir diring [Estrada]" about the plea and his declaration. The court began by giving Estrada a copy of his plea form and confirming that he had reviewed it with trial counsel, initialed it, and signed it. Estrada answered affirmatively when asked whether he "understood that form at the time [he] signed it." The court also asked whether there was "anything [Estrada] want[ed] to add to [his] declaration," and he responded, "No. Basically everything I wanted . . . to put is in [it]."

Next, the trial court discussed at length the plea hearing and the history of the case, including the progress on jury selection made before the parties reached the plea agreement. In particular, Estrada agreed that he knew that because of his trial counsel's advocacy, the punishment he faced had gone from the death penalty to LWOP to an indeterminate sentence with the possibility of being granted parole after 25 years. (See § 3051, subd. (b) [parole for youthful offenders].) Estrada also confirmed that at the plea hearing he "accepted [his] responsibility and said what [he] did, and [he] said that [he] wanted to enter this plea under these circumstances and [he] was doing it without threats and without fear and free[ly] and voluntarily."

The trial court then addressed Estrada as follows:

"I understand and I accept what you say in . . . your declaration. . . . I appreciate what you said, but I don't think— when I look at the paragraph about the issue of whether or not [defense counsel] was going to do the best job possible, she did the best job possible. There is no question in my mind. Under all the

5

factual circumstances of this case and all the cases I've done as a judge and as a lawyer, there's no question that she worked hard for you and did everything she could to get you to this point and it was because of her work we got here.

"And so . . . the allegations . . . if she went to trial, she wouldn't make any more money. That's not ever a consideration, I think, with her. That's not what she did. She's here to do the best job possible, and she knows the consequences and the facts.

"So I say to you in terms of payments and the lack of commitment, she has always been committed to you, and I think by her good work—and I think you have to admit and acknowledge that the quality of her work and what she's done in this case is tremendous. [¶] Would you not say that?"

Estrada agreed, stating that he "appreciate[d] . . . everything [his trial counsel had] done" on his behalf. Reiterating parts of his declaration, he stated that he wanted to go to trial "from the very beginning," had "less than 24 hours" to think about the plea deal after counsel informed him of it, and felt that counsel "pour[ed] guilt into [him]" by referring to the victim's family in encouraging him to avoid trial.

The trial court responded that it would not have accepted Estrada's plea if it "had felt any reluctance on [his] behalf." Though there were numerous jurors "very eager to serve," the court "did what was required" and took his plea "based upon what was represented to [it], that this was a fair and negotiated disposition and that . . . it was done freely and voluntarily." Addressing Estrada, the court concluded, "[L]ooking at you, your mannerism[s] . . . during the process, . . . there was nothing in this remotely that I felt under the circumstances [showed] that you were operating under any type of threat or fear or any factors that would . . . make me find that there was good cause with clear and convincing force that, in fact, your judgment was not free and voluntar[y] and that you'd done this by mistake or

6

fear." Thus, the court denied the motion to withdraw the plea for lack of good cause.

In mid-April 2022, the trial court sentenced Estrada to 50 years to life in prison, composed of a term of 25 years to life for the murder and a consecutive term of 25 years to life for the firearm enhancement. This appeal followed.[7]

## II.
### DISCUSSION

#### A. *Estrada Was Not Completely Denied the Assistance of Counsel for Purposes of His Motion to Withdraw the Plea.*

Estrada claims that his trial counsel rendered ineffective assistance by stating at the March 2 hearing that she did not see grounds for a motion to withdraw the plea and "fail[ing] to argue the motion" at the March 28 hearing. (Boldface omitted.) He contends that this amounted to "a complete denial of the assistance of counsel at a critical stage of the proceeding and is reversible per se." We are not persuaded.

A criminal defendant has the right to effective assistance of counsel under the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *In re Long* (2020) 10 Cal.5th 764, 773.) Normally, to prevail on a claim of ineffective assistance of counsel, a defendant must show "that counsel's performance was deficient," such that "counsel was not functioning as the 'counsel' [constitutionally] guaranteed,"

---

[7] The trial court originally denied Estrada's request for a certificate of probable cause to challenge the plea's legality. Estrada responded by filing a petition for a writ of mandate in this court, which we dismissed as moot after the trial court reversed course and granted the certificate request. (*Estrada v. Superior Court of Alameda* (Sept. 7, 2022, A165625).)

and "the deficient performance prejudiced the defense." (*Strickland*, at p. 687; *People v. Centeno* (2014) 60 Cal.4th 659, 674.)

In *People v. Cronic* (1984) 466 U.S. 648 (*Cronic*), the United States Supreme Court " 'recognized a narrow exception to' the rule that a defendant claiming ineffective assistance of counsel must show prejudice." (*People v. Rices* (2017) 4 Cal.5th 49, 91.) Under *Cronic*, prejudice is presumed if the defendant was completely denied counsel " 'at a critical stage of the proceedings' " or if " 'counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. [Citations.]' [Citation.] Otherwise, 'specific errors and omissions' by trial counsel must generally be litigated as ineffective assistance of counsel claims under *Strickland*." (*People v. Banks* (2014) 59 Cal.4th 1113, 1169–1170.)

Estrada attempts to analogize this case to *United States v. Swanson* (9th Cir. 1991) 943 F.2d 1070, in which the Ninth Circuit Court of Appeals held that "defense counsel's concession, during closing argument, that no reasonable doubt exist[ed] regarding the only factual issues in dispute" was reversible per se under *Cronic*. (*Swanson*, at pp. 1071, 1074.) Although recognizing that his trial counsel "didn't abandon [his] entire defense," Estrada claims she "abandoned his defense at a critical portion of the case."

We disagree that defense counsel's conduct amounted to a complete denial of counsel for purposes of the motion to withdraw the plea. Defense counsel not only requested a hearing once Estrada expressed his desire to withdraw the plea, she also filed a formal motion to withdraw the plea that contained his position. And contrary to Estrada's claim otherwise, she did not "decline[] to argue [the] motion" at the March 28 hearing. In fact, the trial court did not ask either her or the prosecutor to argue, instead focusing the hearing on its own questioning of Estrada. Thus, counsel aided Estrada

8

in presenting his position to the court, and her performance hardly amounted to a complete denial of counsel.

Having failed to show that prejudice should be presumed under *Cronic*, Estrada does not argue that his trial counsel's performance was deficient or prejudicial under *Strickland*. Accordingly, his claim of ineffective assistance of counsel fails. (See *People v. Banks*, *supra*, 59 Cal.4th at p. 1170.)

B. *The Trial Court Did Not Err by Not Appointing Substitute Counsel for a Limited Purpose, and Any Error in the Failure to Hold a* Marsden *Hearing Was Harmless.*

Estrada also argues that the trial court committed reversible error by failing to appoint another attorney to assist him with his motion to withdraw the plea. Alternatively, he argues that he is entitled to a remand for a *Marsden* hearing. Neither contention is persuasive.

In *Marsden*, our state Supreme Court held that the constitutional right to effective assistance of counsel "encompasses the right to have . . . court-appointed counsel discharged and replaced by another one when the ' " 'failure to do so would substantially impair or deny the right' " ' to assistance of counsel." (*People v. Armijo* (2017) 10 Cal.App.5th 1171, 1178.) A defendant who wants new counsel is not required to make a formal motion, but "need only clearly indicate to the trial court 'in some manner' " that "the discharge and replacement of the appointed counsel" is desired. (*Ibid.*) If a defendant seeks new counsel under *Marsden*, " 'the trial court must permit the defendant to explain the basis of [the] contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that [the] defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)

9

Particularly relevant here is *People v. Sanchez* (2011) 53 Cal.4th 80 (*Sanchez*), which addressed when "a trial court is obligated to conduct a hearing on whether to discharge counsel and appoint new counsel when a criminal defendant indicates a desire to withdraw a guilty or no contest plea on the ground that current counsel has provided ineffective assistance." (*Id.* at pp. 83–84.) In *Sanchez*, after the defendant pleaded guilty, his public defender "told the trial court that [the] defendant 'wishe[d] to have the Public Defender explore having his plea withdrawn.' " (*Id.* at pp. 84–85.) The court asked whether the public defender could do that or whether the court needed to appoint conflict counsel, and the public defender asked for more time " 'to check out any issues for possible withdrawal.' " (*Id.* at p. 85.) At the next hearing, another public defender told the court "that conflict counsel needed to be appointed," and the court responded by " 'appoint[ing] conflict counsel for the sole purpose of looking into the motion to withdraw [the defendant's] plea.' " (*Ibid.*) Conflict counsel concluded there was no basis for withdrawing the plea, and sentencing proceeded with the defendant's original counsel representing him. (*Id.* at pp. 85–86.)

*Sanchez* held that a trial court must hold a *Marsden* hearing in response to a defendant's desire to withdraw a plea based on ineffective assistance of counsel "only when there is at least some clear indication by the defendant, either personally or through counsel, that the defendant wants a substitute attorney." (*Sanchez, supra*, 53 Cal.4th at p. 84.) The Supreme Court determined that the defendant before it satisfied this standard because "through counsel, [he] requested that a 'conflict' or substitute attorney be appointed immediately, and the obvious implicit ground for that request was the incompetency of [his] currently appointed counsel." (*Id.* at p. 91.) In turn, the trial court erred by "appoint[ing] substitute counsel to represent

10

[the] defendant on a motion to withdraw his plea in lieu of conducting a *Marsden* hearing—in effect, granting [his] *Marsden* motion without conducting the required hearing." (*Id.* at p. 92.) The Supreme Court "specifically disapprove[d] of the procedure of appointing substitute or 'conflict' counsel solely to evaluate a defendant's complaint that [the defendant's] attorney acted incompetently with respect to advice regarding the entry of a . . . plea," emphasizing that "substitute counsel must be appointed as attorney of record for all purposes." (*Id.* at p. 84.) The Court concluded that the failure to hold a *Marsden* hearing was prejudicial and a remand for such a hearing was required. (*Sanchez*, at pp. 92–93.)

In his opening brief, Estrada argued that the trial court erred by failing to appoint a new attorney to represent him for purposes of filing and arguing a motion to withdraw the plea. He did not cite *Sanchez*, which the Attorney General raised for the first time in the respondent's brief. As that decision makes clear, courts should not appoint substitute counsel solely " 'to investigate or evaluate [a] defendant's proposed . . . plea withdrawal motion.' " (*Sanchez*, *supra*, 53 Cal.4th at p. 89.) Thus, although the trial court indicated it would appoint new counsel to assist Estrada with a motion to withdraw the plea, it did not err by failing to do so.

In his reply brief, Estrada argues that it is "irrelevant" whether the trial court had "authority [under *Sanchez*] to make a limited appointment" because the court did not intend to appoint substitute counsel "for the limited purpose[] of determining whether there were grounds to withdraw the plea." Estrada appears to claim that the proposed appointment was not for a limited purpose because the court indicated that substitute counsel would not only evaluate potential grounds for a motion to withdraw the plea but also argue the motion on his behalf. But under *Sanchez*, "substitute counsel must

11

be appointed as attorney of record for *all* purposes." (*Sanchez*, *supra*, 53 Cal.4th at p. 84, italics added.) The record contains no evidence that the court contemplated that Estrada's trial counsel would be discharged and new counsel would represent him for all purposes going forward. Indeed, as Estrada recognizes elsewhere in his brief, the court specifically stated at the March 2 hearing that it was "not going to appoint a [substitute] lawyer for the sentencing in this matter."

The question then becomes whether the trial court erred by failing to hold a *Marsden* hearing in response to a "clear indication" by Estrada that he wanted a substitute attorney. (*Sanchez*, *supra*, 53 Cal.4th at p. 84.) *Sanchez* concluded that the defendant clearly indicated his desire for a substitute attorney because his public defender asked that conflict counsel be appointed to evaluate a motion to withdraw the plea. (*Id.* at pp. 84–85, 91.) Likewise, at the March 2 hearing, Estrada's trial counsel requested the appointment of conflict counsel to evaluate a motion to withdraw the plea. Under *Sanchez*, this was sufficient to trigger a *Marsden* hearing.

Nonetheless, we disagree with Estrada that a remand for a *Marsden* hearing is required. Unlike in *Sanchez*, here the trial court did not follow through on its promise to appoint substitute counsel for a limited purpose, and Estrada's trial counsel ultimately filed the motion to withdraw the plea on his behalf. But Estrada never objected to the court's failure to appoint a substitute attorney or suggested he was dissatisfied with counsel's assistance in filing the motion. Indeed, at the March 28 hearing he agreed that her work had been "tremendous," and he said he "appreciate[d] . . . everything she ha[d] done for [him]." Thus, even if he wanted substitute counsel on March 2, by March 28 he had abandoned that position. As a result, his current request for a *Marsden* hearing is forfeited.

In any case, we agree with the Attorney General that any error in the failure to hold a *Marsden* hearing was harmless beyond a reasonable doubt, because the trial court would have denied Estrada's motion to withdraw the plea even if substitute counsel was appointed. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *Marsden, supra*, 2 Cal.3d at p. 126; *People v. Winn* (2020) 44 Cal.App.5th 859, 871.) Through his declaration, which contained "everything" he wanted to say, Estrada had a full opportunity to present his reasons for wanting to withdraw the plea. The court did not find the declaration credible, however, and it denied the motion based on its observations of Estrada at the plea hearing and knowledge of his trial counsel's performance. There is no indication that the outcome would have changed had Estrada been represented by a different attorney, and he does not argue otherwise. In short, he is not entitled to relief based on the fact that substitute counsel was never appointed.

C.    *The Trial Court Was Not Required to Credit Estrada's Declaration.*

Finally, Estrada contends that his declaration "state[d] a prima facie case" that he was coerced into entering the plea, based on his claim that his trial counsel threatened to accuse his family members of a crime if he did not take the plea deal. He argues that because counsel did not deny making this threat, his statement was "uncontradicted and the trial court had to accept it as true." This claim is meritless.

Although Estrada does not frame it as such, his claim is effectively that the trial court erred by denying his motion to withdraw the plea. Under section 1018, a trial court may permit a defendant to withdraw a plea before judgment "for a good cause shown." For good cause to exist, there must be "clear and convincing evidence that [the defendant] was operating under mistake, ignorance, or any other factor overcoming the exercise of . . . free

13

judgment, including inadvertence, fraud, or duress." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) We review the denial of a motion to withdraw a plea for an abuse of discretion, and we "must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Even if the alleged threats to Estrada's family otherwise established good cause to withdraw the plea, the trial court was not required to credit Estrada's declaration. "It is up to the trial court to determine whether [a] defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*People v. Martinez* (2013) 57 Cal.4th 555, 565.) In other words, uncontradicted evidence is not necessarily credible evidence.[8]

In any case, Estrada's declaration *was* contradicted—by his own statements before entering the plea. As the Attorney General points out, "[s]olemn declarations in open court carry a strong presumption of verity," meaning that Estrada's representations at the plea hearing are "a formidable barrier" to obtaining relief. (*Blackledge v. Allison* (1977) 431 U.S. 63, 74.) At that hearing, Estrada agreed that he was "entering this plea free[ly] and voluntarily," and he denied that "anybody threatened [him] to get [him] to enter this plea today." Moreover, in denying Estrada's motion to withdraw the plea, the trial court relied on its own observations of Estrada, noting that

---

[8] In his reply brief, Estrada claims that his declaration was corroborated because by filing it, his trial counsel implicitly certified that it had "evidentiary support" under Code of Civil Procedure section 128.7, subdivision (b)(3). He also claims that counsel's certification under that statute triggered an "affirmative duty" on the Attorney General's part to disclose evidence supporting his declaration. Since Estrada did not raise these arguments in his opening brief, we decline to consider them. (See *People v. Wilson* (2023) 14 Cal.5th 839, 872, fn. 11.)

his demeanor did not "remotely" suggest that he was "operating under any type of threat or fear." Combined with Estrada's statements at the plea hearing, these observations constituted substantial evidence that the plea was not entered under duress. The court did not err by denying the motion to withdraw the plea.

## III.
### DISPOSITION

The judgment is affirmed.

15

_____

Humes, P.J.


WE CONCUR:




_____

Margulies, J.




_____

Bowen, J.*






      *Judge of the Superior Court of the County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*People v. Estrada*  A165383